UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                            Case # 16-CR-41-FPG-HBS

v.

                                            DECISION AND ORDER

JULIO RODRIGUEZ a/k/a Richard Rodriguez
a/k/a Richie Rodriguez, GREGORY GIBBONS,
LAURENCE SAVEDOFF, and TINA BROWN,

                    Defendants.

## INTRODUCTION

On April 13, 2016, the United States of America filed a twenty-four-count indictment alleging that Defendants fraudulently acquired mortgage loans for real estate transactions in violation of 18 U.S.C. §§ 2, 1341, 1343-44, and 1349. ECF No. 1.

On November 22, 2017, Savedoff moved to transfer[1] the case from the Western District of New York ("WDNY") to the Southern District of New York ("SDNY") that was later joined by Rodriguez.[2] *See* ECF Nos. 135, 154. The parties submitted briefs on the motion and United States Magistrate Judge Hugh B. Scott issued a Report and Recommendation ("R&R") on February 20, 2018, recommending that the Court grant Defendants' Motion. *See* ECF No. 173. The

---

[1] As Judge Scott notes in his Report and Recommendation, it appears that the Second Circuit has not determined whether a motion to transfer venue is a dispositive motion requiring a report and recommendation. *See* ECF No. 173 at 2 n.1. Courts within the Circuit are split. *See Salgado v. New York State Dep't of Corrections & Cmty. Supervision*, 13-CV-01108-RJA-MJR, 2018 WL 1663255, at *2 (W.D.N.Y. April 6, 2018) (Roemer, Mag. J.) ("Moreover, courts, including courts within this Circuit, have differed as to whether a motion to change venue is dispositive or non-dispositive in nature."). Until the split is resolved, it is best to treat the motion as dispositive. The Court will do so.

[2] The Court will refer to Savedoff and Rodriguez collectively as "Defendants." Gibbons and Brown plead guilty and are cooperating with the Government, so they do not join the Motion to Transfer. *See* ECF Nos. 108, 125.

1

Government filed objections to the R&R, to which Defendants responded. *See* ECF No. 174, 186-87. The Objections are currently before the Court.

For the reasons stated, the Court adopts Judge Scott's R&R in its entirety, and the Defendants' Motions to Transfer are granted.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) (citing *Cullen v. United States*, 194 F.3d 401, 405-07 (2d Cir. 1999)); *see also* Fed. R. Crim. P. 59(b)(2); Loc. R. Crim. P. 59(c)(2) ("Written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority.").

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim. P. 59(b)(3).

## DISCUSSION

**I.      The Applicable Law**

Under Federal Rule of Criminal Procedure 21(b), a court "may transfer the proceeding . . . to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice," upon a defendant's motion. "Disposition of a Rule 21(b) motion is vested in the sound discretion of the district court." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).

A court considers ten factors outlined in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964) when it decides a motion to transfer:

1) Location of the Defendants

2) Location of the Witnesses

3) Location of the Events in Issue

4) Location of Documents and Records

5) Disruption of the Defendants' Business(es)

6) Expense to the Parties

7) Location of Counsel

8) Relative Accessibility of the Place of Trial

9) Docket Condition of Each District

10) Other Special Elements

*United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 455 (S.D.N.Y. 1997) (citing *United States v. Russell*, 582 F. Supp. 660, 662 n.2 (S.D.N.Y. 1984)). The Supreme Court did not explicitly adopt the factors, but Courts within the Second Circuit have consistently used them to decide motions to transfer under Rule 21(b). *See Russell*, 582 F. Supp. at 662 n.2; *see also United States v. Kirk Tang Yuk*, 885 F.3d 57, 74 n.5 (2d Cir. 2018) (explaining that the *Platt* factors are used to decide a motion to transfer). No single factor is dispositive and "it remains for the court to try to strike a balance and determine which factors are of greatest importance." *Maldonado-Rivera*, 922 F.2d at 965 (quoting *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990)) (alteration omitted).

## II. The R&R, Government's Objections, and Defendants' Response

In his R&R, Judge Scott considered the ten *Platt* factors and made the following rulings in order of the factors listed above: the location of the Defendants, the location of the events in issue,

3

the location of documents and records, disruption of Defendants' businesses, expense to the parties, location of counsel, and other special elements, including timing of the motion and caretaker responsibilities both Defendants bear for their families, all favor transfer. *See* ECF No. 173 at 9-17.

The Government objected to Judge Scott's analysis on all but two of the factors: disruption of Defendants' businesses and the caretaker responsibilities of both Defendants.[3] *See* ECF No. 174 at 7-18. The Court has reviewed Judge Scott's analysis on those two factors, finds no clear error, and does not address them below.

Defendants then filed responses[4] to the Government's Objections. *See* ECF Nos. 186-87.

## III. The General Rule

As a threshold matter, there is disagreement between Judge Scott, the Government, and Defendants on whether a general rule applies to the Court's analysis of the Motion to Transfer. Judge Scott cites Charles Alan Wright's treatise on Federal Practice and Procedure in finding that there is no applicable, general rule. ECF No. 173 at 8. The Government disagrees—they point to several SDNY decisions that note, as a general rule, that criminal prosecutions should remain in their original district. ECF No. 174 at 8. Defendants jump into the fray, arguing that the general rule cited by the government is based on *dictum* in *United States v. United States Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1964), that there is a competing general rule in SDNY that cases should be prosecuted in "the district where the gravamen of the alleged misconduct occurred," and that SDNY prefers to prosecute defendants in their district of residence. ECF No. 187 at 20-21.

---

[3] The Government mentions arguments both Defendants make in their separate motions regarding their caretaking responsibilities, but it does not specifically reference Judge Scott's analysis on that topic. Consequently, the Court does not review Judge Scott's analysis. *See* Loc. R. Crim. P. 59(c)(2) ("Written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made . . . .").

[4] Rodriguez filed a response to the Government's Objections separate from Savedoff, but joins Savedoff's response insofar as it is applicable. *See* ECF No. 186 at 2 n.1.

4

Based on recent, Second Circuit *dictum*, the general rule is to keep cases in their original district. *See Kirk Tang Yuk*, 885 F.3d at 74 n.5 ("Here, the District Court appropriately considered the *Platt* factors in a detailed decision, concluding that transfer was unwarranted in light of the 'general rule' that 'a criminal prosecution should be retained in the original district' . . . ."); *see also Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 209 (E.D.N.Y. 2007) ("[A]s a general principle, a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of dictum."); *Lee v. Coughlin*, 643 F. Supp. 546, 549 (W.D.N.Y. 1986) (Telesca, J.) (finding Second Circuit dictum "worthy of great weight and respect from the lower courts of this Circuit."). SDNY does have a policy of affording the location-of-defendants factor from *Platt* "greater weight." *See United States v. Pastore*, 17-cr-343 (NSR), 2018 WL 395490, at *2 (S.D.N.Y. Jan. 11, 2018). Since the Second Circuit has not endorsed that policy, however, it is merely persuasive, not precedential. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 (2d Cir. 2008) ("District Court decisions . . . create no rule of law binding on other courts."); *see also Threadgill v. Armstrong World Indus.*, Inc., 928 F.2d 1366, 1371 (3d Cir. 1991) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another."). With the general rule and policy in mind, the Court turns to its *de novo* review of the factors to which the Government objected.

**IV.     The *Platt* Factors**

    **A.     Location of the Defendants**

In Judge Scott's R&R, he found that both Defendants reside in SDNY, which favors transfer. *See* ECF Nos. 173 at 12, 15. The Government argues that Judge Scott placed too much weight upon the finding and that the "Second Circuit has made clear" that the Defendants' residence has no bearing on a motion to transfer. ECF No. 174 at 14.

5

The Government is correct. In *Maldonado-Rivera*, the Second Circuit reviewed, among other things, the decision of the district court to deny defendants' motion to transfer the case under Rule 21(b). 922 F.2d at 965. In its analysis, the Second Circuit reviewed the district court's findings and affirmed the district court's decision. *Id.* at 966 ("[T]he district court gave thorough consideration to all of the appropriate factors. We see no abuse of discretion, and we affirm the denial of the motions substantially for the reasons stated in the court's venue rulings."). In its review of the district court's findings, the Second Circuit quoted a line from the district court's decision, which in turn quoted the Supreme Court's decision in *Platt*: "The district court observed that the residence of the defendants 'has no independent significance in determining whether transfer to that district would be in the interest of justice, although it may be considered with reference to such factors as the convenience of records, officers, personnel and counsel.'" *Id.* at 965 (quoting *Platt*, 376 U.S. at 245-46) (internal quotation marks omitted). Consequently, both the Supreme Court and the Second Circuit have noted that a defendant's residence does not hold "independent significance" in analyzing a Rule 21(b) motion.

That holding, however, puts the Court in a seemingly absurd position: the Defendants' residence holds no independent significance in analyzing the motion, but the location of the Defendants—*i.e.*, their residences—is a factor the Court can consider under the *Platt* decision.

Nonetheless, the Court cannot ignore precedent from the Second Circuit and the Supreme Court. Accordingly, the Court finds that the location of the Defendants favors transfer, but the fact that Defendants reside in SDNY favors transfer only to the extent that it affects the other *Platt* factors.

B.  **Location of the Witnesses**

The Government next argues that Judge Scott improperly weighed the location of the witnesses in his analysis. *See* ECF No. 174 at 9. Specifically, it contends that Judge Scott incorrectly stated that the Government never countered Defendants' assertion that SDNY is the center of the alleged criminal scheme. *See id.* The Government responds[5] by noting that the witnesses in this case are spread throughout New York State. *See id.* Moreover, the Defendants did not provide a witness list to the Court as the Government did. *See id.* at 10-11.

The Government is incorrect—Judge Scott did not improperly weigh the location of the witnesses, because he did not weigh their location at all. Indeed, the portion of Judge Scott's R&R that the Government is arguing against involves the location of the alleged criminal scheme. That analysis goes to the third *Platt* factor—the location of the events in issue.

More importantly, the Government's own witness list favors transfer. In its objections, the Government explains that its preliminary witness list contains 50 witnesses. ECF No. 174 at 10. The New York City area contains the largest number of witnesses from any single area, 17, while WDNY contains only six.[6] *Id.*

Because Defendants did not provide either Judge Scott or this Court with a witness list, the location of their potential witnesses does not factor into the Court's analysis. *See Pastore*, 2018 WL 395490, at *3 ("Defendant's mere averment that he *may* rely on character witnesses who *may*

---

[5] In this section, the Government also argues that "[t]he actions of the [D]efendants to avail themselves of [WDNY] make it reasonable for them to be tried [t]here." ECF No. 174 at 12. The Court agrees. However, that is irrelevant to the Rule 21(b) analysis. As the Second Circuit and numerous other courts within the Circuit have explained, the Court must use the *Platt* factors to determine whether to transfer the case in the interest of justice and for the convenience of the parties, any victim, and the witnesses. *See* Fed. R. Crim. P. 21(b).

[6] The remainder include twelve in the Northern District of New York, two in Virginia, one in Connecticut, one in Florida, one in Ohio, and ten who have not been identified. *Id.*

7

be located in [the transferee District] is insufficient to sway this factor in his favor.") (emphasis in original).

Regardless, the Court finds that this factor supports transfer based on the Government's witness list.

### C. Location of the Events in Issue

As explained above, the Government attempts to counter Judge Scott's finding that SDNY contains the center of the alleged criminal scheme by arguing that its witnesses are spread throughout New York State. *See* ECF No. 174 at 9. The Government's attempted counterargument, however, does not directly challenge Judge Scott's finding. In fact, based on the Court's review, Judge Scott's conclusion is accurate—during the alleged criminal acts, the Defendants lived and worked in SDNY, all of the properties at issue are located in SDNY, and it appears that all of the alleged criminal acts were performed in SDNY. *See* ECF No. 1 at 1-2, 4-5, 9-23. Consequently, despite the Government's protest, this factor favors transfer.

### D. Location of Documents and Records

In his R&R, Judge Scott found that, while the location of discovery is usually a neutral factor, the factor counsels transfer since discovery from Defendants would "almost certainly" originate in SDNY, numerous trial witnesses likely reside outside WDNY, and one of the key pieces of discovery in this case originated outside WDNY. *See* ECF No. 173 at 12-13. The Government argues that Judge Scott improperly made his determination in light of case law within this Circuit, among other reasons. *See* ECF No. 174 at 16-17.

The Court agrees with the Government. "It is well settled that given the conveniences of modern transportation and communication, the location of [discovery] is a minor concern." *United States v. Estrada*, 880 F. Supp. 2d 478, 484 (S.D.N.Y. 2012); *see also Pastore*, 2018 WL 395490,

8

at *3 ("'Because the location of documents and records is not a major concern in these days of easy and rapid transportation,' this factor is neutral." (quoting *United States v. Brooks*, No. 08-CR-35 (PKL), 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008))). Accordingly, the Court finds that this factor is neutral.

### E. Expense to the Parties

Next, the Government argues that Judge Scott improperly concluded that Defendants would bear more expense than the Government if this case were litigated in WDNY. *See* ECF No. 174 at 17-18. In his R&R, Judge Scott concluded that a trial in WDNY would be more expensive for Defendants because Savedoff's principal trial counsel is in SDNY, his local counsel in Buffalo is expendable, Judge Scott assigned Rodriguez counsel located in SDNY, and any burden on the Government should not outweigh convenience to Defendants. *See* ECF No. 173 at 11-12, 16.

The Government argues that Judge Scott ignored relevant case law within the Second Circuit and the expense of relocating two Assistant United States Attorneys, a paralegal, and agents to SDNY, along with time lost while a new judge becomes familiar with the case. *See* ECF No. 174 at 18.

First, the Government's referral to "relevant case law in this Circuit" is unavailing. The Government cites cases from the District of New Jersey and the Eastern District of Pennsylvania, which are in the Third Circuit, not the Second. *See Third Circuit Courts*, http://www.ca3.uscourts.gov/third-circuit-courts (last visited May 4, 2018).

Case law from courts within this Circuit demonstrates a balancing of the expenses expected for the Government and the Defendants. *See, e.g.*, *Pastore*, 2018 WL 395490, at *3 (weighing anticipated costs of the defendants against relocation costs for the Government); *Estrada*, 880 F. Supp. 2d at 484. What's more, one of those same decisions noted that, absent hard evidence of

anticipated costs to either party and their effect, the factor is neutral. *See Estrada*, 880 F. Supp. 2d at 484 ("In the absence of evidence of a material difference in total travel costs or, more importantly, evidence that [the defendant] cannot afford to bear those costs, this factor does not favor transfer.").

Here, each side claims that a transfer, or lack thereof, would financially burden them more than the other. There is, however, no demonstrated evidence of costs that either the Defendants or the Government would incur or the effect those costs would have on each party. Consequently, the Court finds that this factor is neutral.

### F. Location of Counsel

The Government next argues that Judge Scott improperly emphasized the location of counsel when he found that it supported transfer. *See* ECF No. 174 at 16. Specifically, the Government argues that Savedoff has counsel in WDNY and that it is unfair to conclude that Rodriguez's counsel is located in SDNY since Judge Scott appointed Rodriguez counsel located in SDNY. *Id.*

The Government's arguments fail. Although Savedoff has retained counsel in WDNY, the Government does not dispute that Savedoff's principal counsel is located in SDNY. Additionally, Judge Scott appointed Rodriguez counsel located in SDNY "to assist with trial preparation" and reduce cost. *Id.* at 16. It was not done to lay the groundwork to rule in Defendants' favor on a motion to transfer. *See* ECF No. 174 at 16 ("[Judge Scott], more than a month before defendant Savedoff filed the instant motion, appointed downstate counsel for Rodriguez . . . ."). Regardless, the factor asks only for the location of Defendants' counsel, not the circumstances surrounding a counsel's appointment or retainer. *See Estrada*, 880 F. Supp. 2d at 485 ("The *Platt* factor

denominated "location of defense counsel" concerns exactly that: the location of defense counsel[.]"). Since both of Defendants' counsel are located in SDNY, that factor favors transfer.

### G. Other Special Elements

#### i. Timing of the Motion

The Government also argues that Judge Scott incorrectly found that the procedural posture of the case favors transfer. *See* ECF No. 174 at 12-13. In his R&R, Judge Scott noted that Defendants filed their motion "when no omnibus pretrial motions have been filed and no trial date has been set." ECF No. 173 at 10. In response, the Government contends that it is "unfair" to conclude that the procedural posture favors transfer when the Government has consistently objected to Defendants' attempts to delay the case. *See* ECF No. 174 at 12-13. Additionally, the Government notes that Defendants did not file their motion until twenty months after they were indicted, which should weigh against transfer. *Id.*

In its argument, the Government cites *United States v. Riley*, which provides thorough analysis of this issue. 296 F.R.D. 272, 278-79 (S.D.N.Y. 2014). In the decision, the Court noted that "many judges in this district have found that a defendant's delay in making a Rule 21 motion counsels against transfer, especially when the trial court considering the motion is already familiar with the case." *Id.* at 278. Moreover, "[t]he Defendants had ample opportunity to move to transfer the case prior to the date when pretrial motions were due, yet they chose not to do so." *Id.* at 279.

Here, there has been a substantial amount of delay between the Indictment and the motion to transfer, which ostensibly weighs against transfer. *See Spy Factory, Inc.*, 951 F. Supp. at 461 ("It is true that in change of venue cases, as the Government explains, one of the factors to which the Second Circuit has paid special attention is a defendant's delay in moving to transfer the case." (alteration, quotation marks, and citations omitted)). As the Second Circuit and other cases have

explained, however, it is not simply delay that weights against transfer, but its effects. Specifically, Courts want to avoid forcing another court to become familiar with a case that has already advanced to its late stages. *See United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir. 1979) (noting that the motion to transfer was not filed until the "eve of trial."); *see also Spy Factory, Inc.*, 951 F. Supp. at 463 ("[T]ransferr[ing] the action . . . at this late stage would necessitate not only that the new judge be bound by important decisions already made by this Court, but also that the [new] judge duplicate the efforts made by this Court to become familiar with the case.").

There is no such risk in this case. As Judge Scott noted, there is not trial date set and the parties have yet to file omnibus pretrial motions. Indeed, there is not even a due date set for pretrial motions. The Court acknowledges that twenty months passed between the Indictment and the instant motion, but this Court is not yet familiar with this case, so transferring it would not duplicate judicial effort or bind a new judge with decisions of this Court. Consequently, this factor supports transfer.

### ii. Severance

The Government next argues that Judge Scott failed to consider that transferring the case would effectively sever Savedoff and Rodriguez from the four Defendants who have plead guilty and are cooperating against Savedoff and Rodriguez. *See* ECF No. 174 at 14.

If holding a trial in another district would effectively sever the transferee defendants from other defendants, a district court must consider this as a special element to be weighed against the other *Platt* factors. *See United States v. Parrilla*, No. 13 Cr. 360(AJN), 2014 WL 2200403, at *2 (S.D.N.Y. May 22, 2014) (citing *United States v. Valdes*, No. 05 Cr. 156(KMK), 2006 WL 738403, at *10 (S.D.N.Y. Mar. 21, 2006)). Courts should avoid transferring cases if the transfer results in duplicate trials. *See United States v. Murgio*, 15-cr-769(AJN), 2017 WL 365496, at *22 (S.D.N.Y.

12

Jan. 20, 2017); *see also Valdes*, 2006 WL 738403, at *10 ("[S]evering the trial of properly joined defendants without good reason is contrary to the interest of justice.").

Here, there is no such concern. Transferring the case does not require separate trials. The only complication is that the cooperating Defendants would be sentenced before a court different from the one that holds the trial for Savedoff and Rodriguez. This special element weighs against transfer, but only slightly.

### H. Remaining Factors

For clarity, the Court notes that neither Judge Scott, the Government, nor the Defendants have made any arguments regarding the eighth and ninth factors—relative accessibility of the place of trial and the docket condition of each district. Thus, the Court takes no position as to their impact, or lack thereof, on the Rule 21(b) analysis.

## V. The Summary

A majority of the *Platt* factors at issue favor transfer: the location of the Defendants, the location of the witnesses, the location of the events in issue, the disruption of the Defendants' businesses, the location of counsel, and the timing of the motion. Importantly, the two factors that carry particular weight in this Circuit—the location of Defendants and the timing of the motion— both favor transfer. The only factors that do not favor transfer are the location of discovery and expense to the parties, which are both neutral, and the effective severance of Savedoff and Rodriguez's trial from sentencing for the cooperating Defendants, which is the only factor weighing against transfer. As a result, the Court finds that the interest of justice and the convenience of the parties, victims, and witnesses, favor transfer.

## CONCLUSION

Accordingly, Judge Scott's R&R, ECF No. 173, is ADOPTED in its entirety, and the Defendants' Motions to Transfer, ECF Nos. 135, 154, are GRANTED. The Clerk of Court is directed to forward a copy of this Decision and Order to the Clerk of Court of the United States District Court for the Southern District of New York and close this case.

IT IS SO ORDERED.

Dated: May 8, 2018
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court